1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16

JAMES D. ALLEN,

               Plaintiff,

    v.

ARIAS, *et al.*,

               Defendants.

Case No.  1:22-cv-01502-ADA-BAM (PC)

**FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS**

(ECF No. 12)

**FOURTEEN (14) DAY DEADLINE**

17
18
19
20

      Plaintiff James D. Allen ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  The Court screened Plaintiff's complaint and granted Plaintiff leave to amend.  Plaintiff's first amended complaint is currently before the Court for screening.  (ECF No. 12.)

21

**I.**      **Screening Requirement and Standard**

22
23
24
25
26
27

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

28

      A complaint must contain "a short and plain statement of the claim showing that the

1

1   pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

2   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

3   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

4   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as

5   true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,

6   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

7         To survive screening, Plaintiff's claims must be facially plausible, which requires

8   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

9   for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

10  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully

11  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

12  standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

13  **II.     Plaintiff's Allegations**

14        Plaintiff is currently housed at the Chuckawalla Valley State Prison, in Blythe, California.

15  Plaintiff alleges the events in the complaint occurred at California Correctional Institution

16  ("CCI") in Tehachapi, California. Plaintiff names as defendants: (1) Arias, correctional officer,

17  (2) J. Burgess, correctional officer, (3) J. Harris, correctional officer, (4) M. Rodriguez,

18  correctional officer, (5) John Doe, correctional officer, (6) Captain M. Garcia, (7) John/Jane Doe,

19  medical psych personnel. Each defendant is sued in their individual and official capacities.

20        In claim 1, Plaintiff alleges violation of the Eighth Amendment. On November 18, 2021,

21  Plaintiff caught Maddox attempting suicide and attempted to intervene. Maddox told Plaintiff

22  that Maddox had attempted to cash bribe Officer Arias in the equipment room to bring in

23  contraband on 11/17/21. Now Maddox told Plaintiff how Defendants Arias and Burgess were

24  pressuring Maddox to snitch on other inmates. Plaintiff asked for a private conference with Arias

25  and Burgess. Plaintiff said he was concerned for Maddox and said "codeword" which caused

26  Arias' change in demeanor. Defendants Arias threatened to send Plaintiff to the hole and created

27  a scenario of how he could have a person stabbed. Plaintiff then compelled Maddox to reveal

28  what Maddox was caught doing and indicated he was attempting suicide because, "I was having a

bad day." Burgess ordered inmate Maddox to cuff up, and he was escorted to an undisclosed section of the prison.  About one and a half hours later, inmate Maddox returned to HU-C4-248. The next day, Maddox attempted to slice Plaintiff's throat with a boxcutter blade, wounding Plaintiff on the right shoulder with a slash and on Plaintiff's left arm and neck.  Plaintiff was transported to Tehachapi Hospital.

Defendant Arias and Burgess failed to protect Plaintiff from the assault by inmate Maddox.  They knew or should have known that inmate Maddox posed a threat to other inmates' safety. Maddox attempted to cash bribe Arias and attempted suicide. Defendant knew that Plaintiff was the person who intervened in the suicide attempt and discovered the attempted bribery.  Inmate Maddox posed a threat to Plaintiff's safety and they failed to closely supervise Maddox and protect Plaintiff.

In claim 2, Defendant John Doe, correctional officer, failed to intervene to prevent the misuse of force and Defendant Rodriguez used excessive force.  On November 19, 2021, at about 2:00 p.m. on Facility C Housing Unit C-4, Defendant John Doe, correctional officer, responded to the alarm to discover an unconscious inmate Maddox. John Doe also discovered Plaintiff kneeling on one knee before ordering Plaintiff to prone out on the floor.  John Doe put Plaintiff in handcuffs and discovered blood on the left side of Plaintiff bottom that had seeped from a wound from the left handcuffed arm, which had a deep slash. Plaintiff said to check his neck and John Doe exclaimed "ooh!" before abruptly leaving Plaintiff lying in handcuffs on his stomach.  A slash was located on his right shoulder.

Within several minutes John Doe, correctional officer, and Defendant Rodriguez returned to Plaintiff. Rodriguez began to spray Plaintiff in the face, eyes, head, shoulder, neck, and ears. Plaintiff was burning, coughing, and gasping for air.  Unconscious Maddox was sprayed with an entire can of chemical agent and he began to go into cardiac arrest.  Plaintiff was triaged at the medical clinic and transported to Tehachapi for treatment.  Upon return, Plaintiff was rehoused in Ad-seg pending investigation.

In claim 3, Plaintiff alleges retaliation against Captain Garcia for attempt to quell Plaintiff's speech.  After the attack and Plaintiff had been released from the hospital back to

Facility C, HU-C4-107, Plaintiff learned he had lost his porter job on 11/24/21.  Plaintiff filed a 602 appeal on 11/26/21 requesting reinstatement of his work assignment and that administration be accountable for the failed suicide intervention.  On December 2, 2021, Captain Garcia and a handful of correctional officers initiated an intimidation tactic to coerce Plaintiff from pursuing a 602 inmate appeal.  At approximately 4:00 p.m. after leaving the medical clinic, Plaintiff was heading back to his housing unit.  Captain Garcia started a hostile dialogue with Plaintiff stating "why you writing all that bullshit?"  Captain Garcia was referring to the 602 appeal.  He said it's all bullshit and you go to Ad-seg, you lose your job.  Plaintiff asked for a sit down meeting, but Captain Garcia denied it. Captain Garcia and a couple of correctional officers attempted to inspire fear to quell Plaintiff's speech which caused Plaintiff vexation of mind, spirit and heart.

In claim 4, Plaintiff alleges Harris and Arias used verbal threats to inspire fear and intimidation to quell Plaintiff's speech for completing and submitting appeal grievance Log no. 000191973.  When Plaintiff was released from the hospital and returned to housing, he filed a 602 grievance. On 2/14/22, Defendants Harris and Arias summoned Plaintiff to the staff office where Harris made the statement "next time I'm going to spray you with the whole can." Harris said that Plaintiff was starting to become a problem and Plaintiff refused to accept a cell mate.  Arias than said "whatever you wrote is having an impact here," and gestured to indicate the co-defendants working in HU-C4.  Defendant Arias threatened Plaintiff's life through a series of verbal and explicit facial expressions, and various means by saying "at least you got your life," and warned Plaintiff that Plaintiff was walking on a hazardous edge. He then said that "he'll get an address" a couple of times meaning that he could do potential harm to Plaintiff or family or friends if Plaintiff pursued litigation against him.

Several days latter on 2/17/21, an inmate approached Plaintiff and said that Defendant Arias was soliciting them to harm Plaintiff.  Arias said he left them out of the report and they "owed him one."  They had been implicated in providing the boxcutter that was used in the attempted murder of Plaintiff on 11/19/21.

In claim 5, Plaintiff alleges that Defendant Arias, Burgess and John/Jane Doe psych tech failed to protect Plaintiff from the homicidal inmate Maddox.  Plaintiff alleges "defendant c/o

4

1    Arias, c/o Burgess, and John/Jane Doe Psych tech demonstrated 'deliberate indifference' by

2    prohibiting Plaintiff from being interviewed by medical /mental health staff or ranking officials in

3    order to provide pertinent information vital to the witnessing account of inmate Maddox's suicide

4    attempt and the reasons conveyed to Plaintiff for the suicide attempt.  Therefore, this placing

5    Plaintiff in position to be retaliated against by a suicidal/homicidal inmate Maddox, of which,

6    Plaintiff alleges is a 'failure to protect.'"

7         As remedies, Plaintiff seeks compensatory and punitive and nominal damages, a

8    preliminary and permanent injunction and declaratory relief.  Plaintiff alleges that he timely

9    complied with the California Government Claims Act.[1]

10   **III.    Discussion**

11        **A.    Federal Rules of Civil Procedure 18 and 20**

12        Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed.

13   R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*,

14   507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec.

15   11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021).

16   Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the

17   same transaction or occurrence, or series of transactions and occurrences, and (2) there are

18   commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348,

19   1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual

20   background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a)

21   will the Court review the other claims to determine if they may be joined under Rule 18(a), which

22   permits the joinder of multiple claims against the same party.

23        Plaintiff may not raise different claims against different defendants in a single action. For

24   instance, Plaintiff may not state unrelated claims, arising on different dates, regarding failure to

25   protect, excessive force, retaliation, verbal abuse and other claims.  Plaintiff alleges various

26

27   ───────────────
     [1] While Plaintiff alleges he complied with the California Government Claims Act, none of his
     claims in his first amended complaint assert a state law claim.  The claims in the first amended
28   complaint are alleged either under the Eighth or First Amendments to the U.S. Constitution.

1     different incidents on 11/19/21, 12/2/21, 2/14/22 and 2/17/22.  Merely because Plaintiff was

2     housed at CCI when the incidents occurred does not make every injury or incident related.

3     Plaintiff was previously informed that the Court will select which cognizable claim may proceed,

4     if any.  Separate unrelated claims must be filed in separate lawsuits.

5          **B.**      **Eleventh Amendment Immunity**

6         Plaintiff is attempting to sue defendants for monetary damages in their official and

7     individual capacities. "Suits against state officials in their official capacity ... should be treated as

8     suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599

9     F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official

10    capacities as a suit against the state of California). An official capacity suit "represent[s] only

11    another way of pleading an action against an entity of which an officer is an agent." *Kentucky v.*

12    *Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official

13    personally, for the real party in interest is the entity." *Id.* at 166 (emphasis in original).

14        "The Eleventh Amendment bars suits for money damages in federal court against a state,

15    its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public*

16    *Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal

17    courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

18    a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid

19    congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The

20    Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an

21    arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of*

22    *Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert.

23    denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment

24    immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at

25    1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985*)); see also Brown v.*

26    *Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of

27    Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

28        Plaintiff's claim for monetary damages against the named defendants in their official

1    capacities is barred by the Eleventh Amendment.

2         **C.    Supervisory Liability**

3         To the extent Plaintiff seeks to hold any defendant liable based solely upon their

4    supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the

5    actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S.

6    at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City*

7    *of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

8    2002). "A supervisor may be liable only if (1) he or she is personally involved in the

9    constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

10   wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

11   Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. &*

12   *Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915–16

13   (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt

14   personal participation in the offensive act if supervisory officials implement a policy so deficient

15   that the policy itself is a repudiation of constitutional rights and is the moving force of a

16   constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

17   (9th Cir. 1989)) (internal quotation marks omitted).

18        Plaintiff may be naming supervisory defendants.  If Plaintiff merely relies on these

19   supervising Defendants' responsibilities to ensure the safety and health of the prisoners, the claim

20   is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at

21   677. Such conclusory allegations are insufficient to state the causal link between such defendant

22   and the claimed constitutional violation.

23        **D.    Eighth Amendment**

24             **1.  Excessive Force**

25        The Eighth Amendment protects prisoners from inhumane methods of punishment and

26   from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

27   2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual

28   Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992)

(citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.

Plaintiff alleges the Defendant Rodriguez pepper sprayed Plaintiff when Plaintiff was prone on the ground and handcuffed.  Plaintiff states a cognizable claim against Defendant Rodriguez.

### 2.  Failure to Protect/Intervene

Plaintiff contends that Defendants Arias and Burgess failed to protect him from the attack by Maddox when Maddox returned to the housing unit.  Plaintiff alleges John Doe psyche tech is also responsible.  In addition, Plaintiff alleged Defendant John Doe, correctional officer, failed to protect Plaintiff from being pepper sprayed by Defendant Rodriguez.

The Eighth Amendment requires that prison officials take reasonable measures to

guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. at 832. In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); see also *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. Mere negligent failure to protect an inmate from harm is not actionable under Section 1983. *See Farmer*, 511 U.S. at 835.

Liberally construing the allegations, Plaintiff states a cognizable claim against John Doe, correctional officer, who was present when Defendant Rodriguez pepper sprayed Plaintiff while Plaintiff was prone and handcuffed.

Plaintiff has not sufficiently alleged that Defendants Arias, Burgess or John Doe, psych tech, put him in danger. Plaintiff does not allege specific facts showing that each Defendant knew about a risk or danger to Plaintiff and then disregarded that risk.   Plaintiff does not describe how each of the defendants was actually aware of a specific threat to his safety.  *See Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of

1  other prisoners do not rise to a sufficiently substantial risk of serious harm").  Plaintiff's

2  speculation that each of the defendants should have known the Maddox was a threat to Plaintiff

3  does not state a cognizable claim.

4  **E.  First Amendment - Retaliation**

5  "Prisoners have a First Amendment right to file grievances against prison officials and to

6  be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)

7  (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a

8  viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

9  state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

10  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

11  (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408

12  F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...."

13  *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct

14  was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271. To state a

15  cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the

16  protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

17  Although the allegations are unclear, Plaintiff claims Captain Garcia retaliated against him

18  on December 2, 2021.  On December 2, 2021, Captain Garcia initiate an intimation tactic to

19  coerce Plaintiff from pursuing a 602 inmate appeal.  At approximately 4:00 p.m. after leaving the

20  medical clinic, Plaintiff was heading back to his housing unit.  Captain Garcia started a hostile

21  dialogue with Plaintiff stating "why you writing all that bullshit?"  He was referring to Plaintiff's

22  602 grievance.  Plaintiff was threatened in retaliation for the inmate appeal. Captain Garcia

23  threatened Plaintiff was looking angrily aggressive and hostile in his facial expression and

24  demeanor.  Plaintiff may also be attempting to allege other claims of retaliation, such as against

25  Defendants Harris and Arias.

26  As currently pled, Plaintiff fails to set forth sufficient factual allegations to support a claim

27  of retaliation. Plaintiff alleges he was engaged in protected conduct of filing a 602. But Plaintiff

28  fails to allege that any adverse action occurred, or that the conversations with Defendant Garcia

1    (on 12/2/21) or with Defendants Harris and Arias (on 2/24/22) chilled Plaintiff's First

2    Amendment rights or that it did not reasonably advance a legitimate correctional goal.  Further,

3    these claims are improperly joined with the cognizable claim for excessive force on 11/19/21.

4         **F.  Title 15 and Policy Violation**

5              To the extent that any Defendant has not complied with applicable state statutes or prison

6    regulations for failure to follow procedures, these deprivations do not support a claim under

7    §1983. Section 1983 only provides a cause of action for the deprivation of federally protected

8    rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the

9    California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580

10   F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal

11   constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–

12   12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right

13   of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if

14   they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D.

15   Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of

16   the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW

17   (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of

18   action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-

19   00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation

20   adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022)

21   (same).

22        **G.  Prison Employment**

23             Plaintiff fails to state a cognizable claim under either the Fourteenth Amendment or

24   Eighth Amendment for loss of his prison job.

25             There is no constitutional right to a prison job.  "[T]he Due Process Clause of the

26   Fourteenth Amendment 'does not create a property or liberty interest in prison employment[.]' "

27   *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Ingram v. Papalia*, 804 F.2d 595,

28   596 (10th Cir.1986) (per curiam); and citing *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 846

1   (9th Cir.1985)); *see also Rainer v. Chapman*, 513 Fed.Appx. 674, 675 (9th Cir. 2013) (holding

2   that the district court properly dismissed the California prisoner-plaintiff's "due process claims

3   based on his removal from his work assignment and transfer from the facility where his job was

4   located because these allegations did not give rise to a constitutionally protected liberty or

5   property interest.")  A prison job is not a basic human need and the loss thereof does not give rise

6   to an Eighth Amendment violation. *See Barno v. Ryan*, 399 F. App'x 272, 273 (9th Cir. 2010)

7   (unpublished opinion).

8           **H. Verbal Harassment**

9           Plaintiff fails to state a cognizable claim for threats.  Allegations of name-calling, verbal

10   abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which

11   prohibits cruel and unusual punishment. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)

12   ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on

13   denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see *also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.

14   1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a

15   cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious

16   and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional

17   deprivation under 42 U.S.C. § 1983.' " *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997)

18   (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted),

19   abrogated on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). However, verbal

20   harassment may violate the constitution when it is "unusually gross even for a prison setting and

21   [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL

22   6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083

23   at 1092).

24           **I.  Unknown Defendant**

25           The use of John Does in pleading practice is generally disfavored – but is not prohibited.

26   *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d

27   1160, 1163 (9th Cir. 1999); *Lopes v. Viera*, 543 F.Supp.2d 1149, 1152 (E.D. Cal. 2008).

28   However, Plaintiff is hereby advised that the Court cannot order service of a Doe defendant

1    because the United States Marshal cannot serve a Doe defendant. Plaintiff will be required to

2    identify him or her with enough information to locate the defendant for service of process.

3    Plaintiff will be given the " 'opportunity through discovery to identify the unknown (Doe)

4    defendants.' " *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (quoting *Gillespie*, 629

5    F.2d at 642). Once the identify of a Doe defendant is ascertained, Plaintiff must file a motion to

6    amend his complaint only to identify the identified Doe defendant so that service by the United

7    States Marshal can be attempted. However, the Court will recommend that any Doe defendant

8    Plaintiff fails to identify during the course of discovery be dismissed from this action.

9              **J.  Declaratory Relief and Injunctive Relief**

10            To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A

11    declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

12    judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*,

13    333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful

14    purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

15    afford relief from the uncertainty and controversy faced by the parties." *United States v.*

16    *Washington,* 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a

17    verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights

18    were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is

19    unnecessary.

20            Insofar as Plaintiff seeks injunctive relief against officials, any such request is now moot

21    because Plaintiff is no longer housed at that facility. *See Andrews v. Cervantes*, 493 F.3d 1047,

22    1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon

23    transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding

24    claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been

25    moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

26            Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of

27    the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief

28    [sought] is narrowly drawn, extends no further than necessary to correct the violation of the

Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.,* 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

**IV.    Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's first amended complaint states cognizable claims for excessive force against Defendant M. Rodriguez in violation of the Eighth Amendment (claim 2), and failure to protect/intervene against John Doe, correctional officer, in violation of the Eighth Amendment (claim 2). However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other Defendants or includes improperly joined claims.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's first amended complaint, filed on June 14, 2023, (ECF No. 12), for excessive force against Defendant M. Rodriguez in violation of the Eighth Amendment (claim 2), and failure to protect/intervene against John Doe correctional officer in violation of the Eighth Amendment (claim 2); and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted and/or improperly joined claims.

\* \* \*

These Findings and Recommendations will be submitted to the United States District

14

Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 11, 2023**                  /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

15