# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES D. ALLEN,<br><br>  Plaintiff,<br><br>  v.<br><br>ARIAS, *et al.*,<br><br>  Defendants. | Case No. 1:22-cv-01502-BAM (PC)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>(ECF No. 60) |

Plaintiff James D. Allen ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's third amended complaint against: (1) Defendant M. Rodriguez for excessive force in violation of the Eighth Amendment; (2) Defendant M. Rodriguez for assault and battery under state law; and (3) Defendant J. Anaya for failure to protect/intervene in violation of the Eighth Amendment. All parties have consented to United States Magistrate Judge jurisdiction. (ECF No. 59.)

On February 6, 2025, Defendants J. Anaya and M. Rodriguez filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF No. 60.) On February 18, 2025, the Court issued a second informational order providing Plaintiff with notice of the requirements for opposing a motion for summary judgment. *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v.*

*Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 61.) Plaintiff filed his opposition on July 21, 2025. (ECF No. 69.) Defendant filed a reply brief on August 4, 2025. (ECF No. 70.) On August 5, 2025, Defendants filed an exhibit to their reply, Grievance Log 327438. (ECF No. 72.)

The motion for summary judgment is deemed submitted. Local Rule 230(l).

**I.      Defendants' Motion for Summary Judgment**

     **A.      Summary of Factual Background**

Plaintiff alleges that on November 18, 2021, he witnessed inmate Maddox attempting to commit suicide in Maddox's cell. (Third Amended Complaint ("TAC"), ECF No. 47 at 3.) Plaintiff intervened and subsequently alerted non-party CDCR staff members of the suicide attempt. (*Id.*) The next day, November 19, 2021, Plaintiff was allegedly attacked by Maddox, during which Maddox sliced Plaintiff's throat. (*Id.* at 3-4.) During the attack, Plaintiff states he defended himself and incapacitated Maddox by knocking Maddox unconscious. (*Id.* at 4.) Defendant Officer J. Anaya arrived first to the scene and secured Plaintiff in handcuffs. (*Id.*) Plaintiff alleges that, several minutes later, Officer Rodriguez arrived and sprayed Plaintiff with pepper spray while he was restrained on the ground. (*Id.* at 5.) Plaintiff alleges Officer Anaya was present and failed to protect Plaintiff from Officer Rodriguez's unnecessary use of pepper spray. (*Id*. at 4-5.)

     **B.      Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*,

1  747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint,
2  a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise,
3  the defendants must produce evidence proving the failure to exhaust, and they are entitled to
4  summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most
5  favorable to the plaintiff, shows he failed to exhaust. *Id.*

6  Defendants must first prove that there was an available administrative remedy and that
7  Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th
8  Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to
9  Plaintiff to show something in his particular case made the existing and generally available
10 administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing
11 *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue
12 of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

13 Effective June 1, 2020, the California prison grievance system has two levels of review.
14 Cal. Code Regs. tit. 15, § 3480, et seq. Pursuant to this system, an inmate may "dispute a policy,
15 decision, action, condition, or omission by the Department or departmental staff that causes some
16 measurable harm to their health, safety, or welfare." *Id.* § 3481(a). Inmate claimants are required
17 to "describe all information known and available to the claimant regarding the claim, including
18 key dates and times, names and titles of all involved staff members (or a description of those staff
19 members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" *Id.* §
20 3482(c). In response, the inmate claimant will receive a written decision from the Institutional or
21 Regional Office of Grievances clearly explaining the reasoning for the Reviewing Authority's
22 decision as to each claim. *Id.* The inmate claimant has the ability to submit a written appeal
23 concerning one or more claims to dispute the decision by the Institutional or Regional Office of
24 Grievances, and in response will receive a written decision from the Office of Appeals clearly
25 explaining the reasoning for the decision as to each claim. *Id.* Generally, "[c]ompletion of the
26 review process by the Office of Appeals constitutes exhaustion of all administrative remedies
27 available to a claimant within the Department." *Id.* § 3486.
28 ///

**C.     Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172.  If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Id.* at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.*

**II. Discussion**

    **A. Undisputed Material Facts ("UMF")**

    1. As of June 1, 2020, an inmate was required to follow the procedures set forth in California Code of Regulations, Title 15, sections 3480-3487 when submitting a grievance.  (ECF No. 60-3 ("C. Bonffil Decl.") at ¶ 2.)

4

2. The grievance process now has two levels of review. This process requires the inmate to submit a grievance in writing to the Institutional Office of Grievances ("OOG") at the prison where they are housed. *Id.*

3. If the inmate wishes to appeal the OOG decision, the inmate may do so in writing to the Office of Appeals ("OOA"). The OOA receives, reviews, and maintains all non-medical inmate grievances at the final level of review. *Id.*

4. On November 26, 2021, Plaintiff submitted his first and only grievance related to the November 19 incident, Log No. 191973. The OOG received the grievance on November 29.[1] C. Bonffil Decl. at ¶ 5; Grievance Log No. 191973 attached as Exhibit A at 2-3 to Bonffil Decl.

5. In Grievance Log No. 191973, Plaintiff complained that on November 18, 2021, he witnessed inmate Maddox attempt suicide by hanging in Maddox's cell; that Plaintiff intervened in Maddox's suicide attempt and notified non-party Officers Arias and Burgess; that Maddox was handcuffed and escorted out of the housing unit but returned about an hour and half later; that the next day, inmate Maddox attempted to slice Plaintiff's throat; that he suffered two injuries that required 11 stitches; and that after the incident, he was placed in administrative segregation and lost his job as a porter as result. C. Bonffil Decl. at ¶ 5; Grievance Log No. 191973 attached as Exhibit A at 2-3 to Bonffil Decl.

6. Under "subject of appeal," Plaintiff listed "job removal and safety negligence…etc." *Id.*

---

[1] Plaintiff disputes this fact to the extent it refers to Grievances Log No. 1919173 as his "only" grievance. Plaintiff cites to four total Grievances he filed purportedly in support of his claims: Appeal Grievances Log No. 1919173, Grievance Log. No. 225842, Grievance Log No. 234672, and Grievance Log. No. 327438. (ECF No. 69 at 32.) Plaintiff also cites to his initial disclosures (Exhibit F, ECF No. 69 at 75), the third amended complaint (Exhibit E, ECF No. 69 at 62), and excerpts of his deposition transcript (Exhibit G, ECF No. 69 at 79). Defendants do not dispute that other grievances were submitted, but dispute that the grievances address Plaintiff's claims for excessive force and failure to protect. The Court has reviewed each of Plaintiff's evidentiary support to determine whether Plaintiff raises issues of fact. In particular, because Plaintiff's four grievances are submitted as undisputed evidence, the Court will review each, *infra*, to determine whether any exhaust administrative remedies.

7. Under "action requested," Plaintiff stated, "I would like those responsible for this disastrous suicide intervention held accountable, and have my Porter's Position Job detail restored, or placed in a suitable work position that is available of my choosing." *Id.*

8. Plaintiff did not mention Defendants, excessive force, battery, or failure to protect in Grievance Log No. 191973. *Id.,* Exhibit A at 2-3.[2]

9. The OOG issued a decision response to Grievance Log No. 191973 on December 25, 2021, disapproving the claim. The OOG described the claim as follows: "[c]laimant alleges he was placed in Administrative Segregation Unit (ASU) on Non Disciplinary Segregation (NDS) and upon return to Facility C he discovered he was unassigned from his position and desires to be reinstated." The OOG determined that staff followed procedures in regard to the unassigning of Plaintiff from his job.[3] *Id.,* Exhibit A at 4-5.

10. On January 3, 2022, Plaintiff appealed the OOG's decision, which the OOA received on January 13, 2022. In Plaintiff's appeal, he stated he was dissatisfied with the OOG's response because it did not address Maddox's suicide attempt. Plaintiff claimed that non-party CDCR staff fabricated a rules violation report and failed to truthfully report on the incident.[4] C. Bonffil Decl. at ¶6; Appeal of Grievance Log No. 191973 attached as Exhibit B at 7-8 to Bonffil Decl.

11. Plaintiff was dissatisfied with the response, and for the first time, Plaintiff complained that unnamed staff used excessive force by spraying Plaintiff with a chemical agent

---

[2] Plaintiff disputes this fact and cites to Grievance Log. No. 1919173. (ECF N0. 69 at 34.) Because the grievance is submitted as undisputed evidence, the Court will review Grievance Log. No. 1919173, *infra*, to determine whether it exhausts administrative remedies.

[3] Plaintiff disputes this fact and cites to Grievance Log. No. 1919173, the third amended complaint, his declaration, and various discovery responses.

[4] Plaintiff disputes this fact and cites to Grievance Log. No. 1919173, Exhibit U ("fabricated RVR-115"), Exhibit V (hearing results). (*See* ECF No. 69 at 34, 131 (Exhibit U), 135 (Exhibit V).)

1     after he had already complied with orders to prone out.[5] *Id.*

2. 12. On March 12, 2022, the OOA issued a decision response, granting Plaintiff's appeal. The OOA described the issue on appeal as follows: "[i]t is appellant's assertion that appellant was inappropriately removed from a job assignment due to being place in the Administrative Segregation Unit." The OOA approved the decision because a classification committee did not remove Plaintiff from his job assignment in accordance with Title 15, section 3040(f). The OOA ordered the prison to refer Plaintiff to the next available classification committee.[6] *Id.* Exhibit B at 9.

3. 13. Plaintiff did not allege excessive force at the first level, and the OOA did not address the claim. See Cal. Code Regs. Tit. 15, § 3485(d)(4) (2021).[7] C. Bonffil Decl. at ¶ 6; Appeal of Grievance Log No. 191973 attached as Exhibit B at 9.

4. 14. The OOA decision does not mention Defendants, excessive force, battery, or failure to protect. *Id.*

5. 15. On February 18, 2022, Plaintiff submitted Grievance Log No. 225842, which was received by the OOG on February 22, 2022. In Grievance Log No. 225842, Plaintiff stated the nature of his grievance is staff misconduct that occurred on February 14, 2022. Specifically, Plaintiff complained that non-party officers Arias and Harris were unprofessional during a conversation about Plaintiff's missing CD player. Plaintiff claimed that the officers brought up the November 19, 2021, incident. Plaintiff described the November 19 incident ". . .wherein an inmate attempted suicide and the

---

[5] Plaintiff disputes this fact and cites to Grievance Log. No. 1919173. (ECF No. 69 at 35, 43 ("I am dissatisfied with the response I was given. . . Staff used excessive force on I/m Allen by spraying chemical agent on me after I had complied with orders to prone out.").) Plaintiff also cites to his declaration (Exhibit H, ECF No. 69 at 96, and the TAC).

[6] Plaintiff disputes this fact and cites to Grievance Log No. 1919173 and Exhibit U (fabricated RVR 115). (ECF No. 69 at 35, 131 (Exhibit U).)

[7] Plaintiff denies this fact and cites to Grievance Log No. 1919173 and various sections within Title 15 of the California Code of Regulations relevant to inmate interviews contending that "Plaintiff contends 1st level interview was never waived." (ECF No. 69 at 36.)

7

following day the same inmate slashed me with a razor twice."[8]  C. Bonffil Decl. at ¶ 7; Grievance Log No. 225842 attached as Exhibit C at 11-12.

16. Plaintiff did not mention Defendants J. Anaya and M. Rodriguez or excessive force, battery, or failure to protect in Grievance Log No. 225842.[9]  *Id.*

17. On Grievance Log No. 225842, on March 1, 2022, the OOG issued a decision stating that the grievance has been identified as an allegation of staff misconduct, and therefore, was forwarded outside the grievance and appeal process to the appropriate authority for investigation. This decision exhausted Plaintiff's administrative remedies as to cell search issue.[10]  *Id.* Exhibit C at 13.

18. The OOG's response to Grievance Log No. 225842 does not mention Defendants, excessive force, battery, or failure to protect.[11]  *Id.*

19. On March 13, 2022, Plaintiff submitted Grievance Log No. 234672, which was received by the OOG on March 16, 2022. In Grievance Log No. 234672, Plaintiff stated the nature of his grievance is to petition California Correctional Institution (CCI) to prevent third watch non-party Officers Arias, Harris, and Burgess from searching Plaintiff's cell without a sergeant present. Plaintiff stated that non-party officers had threatened him in relation to the grievances he filed about the November 19, 2021, incident. Plaintiff described the issues stemming from the November 19 incident, ". . . a bribery situation, suicide attempt, attempted murder, and personal

---

[8] Plaintiff disputes this fact and cites to Grievance Log No. 225842.  He states he was not interviewed, similar to non-interview for Grievance Log No. 1919173.  (ECF No. 69 at 36, 47 (Exhibit B, "Staff Misconduct").)  Because the grievance is submitted as undisputed evidence, the Court will review this grievance, *infra*, to determine whether it exhausts administrative remedies.

[9] Plaintiff disputes this fact and cites to Grievance Log No. 225842. (ECF No. 69 at 36, 47 (Exhibit B, "Staff Misconduct").)

[10] Plaintiff disputes this fact and cites to Grievance Log No. 234672 and Grievance Log No. 327438 (Exhibit C and Exhibit D).  (ECF No. 69 at 37, 51 (Exhibit C), 57 (Exhibit D).)

[11] Plaintiff disputes this fact and cites to Exhibit B, the OOG response to Grievance Log No. 1919173.  (ECCF No. 69 at 37, 47 (Exhibit B, "Staff Misconduct").)

threats against [Plaintiff] and my family. All of which is logged on [a]ppeal grievances Log No. 191973 and Log No. 225842, in addition to open litigation that is being processed."[12]  C. Bonffil Decl. at ¶ 8; Grievance Log No. 234672 attached as Exhibit D at 15-16.

20. In Grievance Log No. 234672, Plaintiff described the November 19 incident as an "attempted suicide or the attempted murder." Finally, Plaintiff requested to speak with CDCR staff and an emergency transfer to the Richard J. Donovan Correctional Facility.[13]  *Id.*

21. Plaintiff did not mention Defendants J. Anaya and M. Rodriguez or excessive force, battery, or failure to protect in Grievance Log No. 234672.[14]  *Id.*

22. On April 12, 2022, the OOG issued a decision identifying five claims in Grievance Log No. 234672. The OOG determined that Claims 1 and 5 were allegations of staff misconduct and were therefore referred outside of the grievance process. Claims 2 and 3 involved requests for interviews and were rerouted to CCI. Finally, in Claim 4, the OOG denied Plaintiff's request for an emergency prison transfer.  *Id.* Exhibit D at 17-19.

23. The OOG's response to Grievance Log No. 234672 does not mention Defendants Anaya and Rodriguez, excessive force, battery, or failure to protect.  *Id.*

24. The OOG received seven other grievances from Plaintiff between on or after November 19, 2021, (the date relevant to the allegations in Plaintiff's Complaint) and November 21, 2022, (the date Plaintiff filed his original Complaint), but none of those

---

[12] Plaintiff disputes this fact and cites to Grievance Log No. 234672. (ECF No. 69 at 37, 51 (Exhibit C).)  Because the grievance is submitted as undisputed evidence, the Court will review the grievance, *infra*, to determine whether it exhausts administrative remedies.

[13] Plaintiff disputes this fact and cites to Grievance Log No. 225842 (Exhibit B). (ECF No. 69 at 38, 47 (Exhibit B).)

[14] Plaintiff disputes this fact and cites to Grievance Log No. 234672 (Exhibit C). (ECF No. 69 at 38, 51 (Exhibit C.)

9

grievances relate to the November 19, 2021, incident.[15]  C. Bonffil Decl. at ¶ 9; Grievance Log No. 234672 attached as Exhibit E at 21-22.

### B. The Parties' Positions

#### 1. Defendants' Moving Arguments

Defendants contend that Plaintiff submitted one prison grievance related to the November 19, 2021 incident which is the subject of the TAC, Grievance Log No. 191973.  In Grievance Log No. 191973, Plaintiff complained that on November 18, 2021, he witnessed inmate Maddox attempt suicide by hanging in Maddox's cell, and complained about Maddox's attempt on Plaintiff's life and that Plaintiff was placed in Administrative Segregation.  Plaintiff did not mention Defendants' excessive force, battery, or failure to protect in Grievance Log No. 191973.

Plaintiff also submitted two grievances regarding unrelated issues, but that mention the November 19 Maddox attack incident: Grievance Log No. 225842 and 234672.  Plaintiff submitted Grievance Log No. 225842, which was received by the OOG on February 22, 2022. (UMF 15.)  In Grievance Log No. 225842, Plaintiff stated the nature of his grievance is staff misconduct that occurred on February 14, 2022.  Plaintiff did not mention Defendants, excessive force, battery, or failure to protect in Grievance Log No. 225842.  For the second of the unrelated grievances, Plaintiff submitted Grievance Log No. 234672, which was received by the OOG on March 16, 2022.  In Grievance Log No. 234672, Plaintiff stated the nature of his grievance is to petition California Correctional Institution (CCI) to prevent third watch non-party Officers Arias, Harris, and Burgess from searching Plaintiff's cell without a sergeant present.  Plaintiff stated that non-party officers had threatened him in relation to the grievances he filed about the November 19, 2021, incident. (UMF 10.)  In Grievance Log No. 234672, Plaintiff described the issues stemming from the November 19 incident, ". . . a bribery situation, suicide attempt, attempted murder, and personal threats against [Plaintiff] and my family. All of which is logged on [a]ppeal grievances Log No. 191973 and Log No. 225842, in addition to open litigation that is being

---

[15] Plaintiff disputes this fact and cites to each of the four Grievance Log Nos. 1919173, 225842, 234672, 327438 (Exhibit A, B, C, and D); ECF No.  69 at 39, 40 (Exhibit A), 47 (Exhibit B),  51 (Exhibit C) and 57 (Exhibit D).

10

processed." Plaintiff did not mention Defendants, excessive force, battery, or failure to protect in Grievance Log No. 234672.

### 2. Plaintiff's Opposition

In Plaintiff's opposition, Plaintiff reviews his allegations and the various Title 15 regulations applicable to the conduct leading up to the Maddox attack. (ECF No. 69 at 8-15.) Plaintiff also summarizes his allegations regarding Maddox and the force used against him. Plaintiff's opposition mainly argues the merits of the case and the force used against him as excessive.[16] As to Grievance Log No. 191973, Plaintiff claims that the grievance conveyed "the key cornerstone concern regarding preservation of life and safety and security of inmates." Plaintiff claims he did not waive his right to an interview for the grievance. (ECF No. 60 at 17.) Plaintiff contends that at the OOA level of review attempted to by-pass Plaintiff's concerns and misrepresented Plaintiff's 602-1 and 602-2 concerns. All of the injuries sustained in the November 19 incident were attributed to the CCI administrators and defendants. Plaintiff states that § 54100.14 permits an inmate "the opportunity to clarify his or her issues and the reviewer to ask questions." (Doc. 69 at 20.) Plaintiff states that the OOG lacked sufficient response, and the OOG's lack of response refused to interview Plaintiff face-to-face as is administratively warranted.

Plaintiff asserts that he exhausted through four appeal grievances. Grievance #191973 submitted on November 26, 2021 informed CCI that the concern was "life and death" and that officials and custody staff should be held accountable. Plaintiff filed a 602-2 on January 3, 2022 regarding appeal Grievance # 191973, in which Plaintiff provided greater detail of the November 19, 2021 incident. Plaintiff was not interviewed such that Plaintiff could give further information.

---

[16] Plaintiff's opposition conflates the merits of his case, regarding whether the events involving Maddox occurred as he alleges, with the separate and distinct issue of whether Plaintiff exhausted his administrative remedies. Because Defendants' motion is concerned solely with whether administrative remedies were exhausted, the Court does not address Plaintiff's arguments regarding the merits of his case. Here, the Court is able construe whether Plaintiff exhausted his remedies from the language in the Grievances Plaintiff filed, which the parties have provided in evidence to this motion, and which are undisputed.

The second grievance was #225842, which was submitted on February 18, 2022. Plaintiff filed #225842 regarding acts of aggression by floor staff Arias and Harris due to the filing of Grievance #1919173. On March 1, 2022, the OOG issued its decision of NOT sustained and Plaintiff was never interviewed.

Plaintiff submitted a third grievance #234672 on March 13, 2022. Plaintiff was appealing the retaliation by Harris, Burgess, and Arias due to pending 602s and litigation (Grievances #191973 and 225842). On June 8, 2022, the OOG issued its decision of NOT sustained.

Plaintiff submitted another Grievance #327438 on November 2, 2022 where Plaintiff asserted that the CCI administration intentionally misrepresented Plaintiff's concerns regarding the incidents on November 18 and 19, 2021. This Grievance #327438 was granted.

Plaintiff argues that a grievance need not contain every fact necessary to prove each element but only that necessary to alert the prison that a problem has occurred and facilitate its resolution. Plaintiff argues that the four Grievances, # 191973, 225842, 234672 and 327438, exhaust his administrative remedies. The CCI personnel were afforded time and opportunity to resolve the dispute.

### 3.  Defendants' Reply

Grievance Log No. 191973 did not exhaust the claims, as the opposition admits because this grievance describes the "cornerstone concern" as the "preservation of life and the safety and security of inmates. . . ." (ECF No. 69 at 17.)

Plaintiff appears to argue that he was not afforded an interview by the prison, and therefore, he did not have an available remedy. (ECF No. 69 at 20-22.) But Defendants do not contend he failed to exhaust this grievance, only that it does not relate to the claims or Defendants in this case. (ECF No. 70 at 2.) Grievance Log No. 191973 was about CDCR's staff purported decision to allow inmate Maddox to return to the yard, not about officers' use of excessive force or failure to protect. The other grievances are similarly not related to this litigation's claims of excessive force and failure to protect: Grievance Log No. 225842, Grievance Log No. 234672. These Grievances relate to non-party officers for unrelated claims. The grievances did not mention Defendants, excessive force, battery, or failure to protect.

Plaintiff attaches CDCR's grievance and appeal decisions to Grievance Log No. 327438—which is unrelated to Defendants, excessive force, and failure to protect. (ECF No. 69 at 58-59.) Plaintiff alleges this grievance stemmed from his other unrelated grievance, Log No. 234672. (*Id*. at 24.) He does not allege he grieved about Defendants, excessive force, or failure to protect.

### III.     Analysis

For purposes of this motion, the Parties agree that the four Grievance Logs discussed below are the relevant Grievances at issue. The Court is able to construe whether Plaintiff exhausted his remedies from the language in the four Grievances Logs Plaintiff filed, which the parties have provided as evidence to this motion and which are undisputed.

**Grievance Log No. 191973**

Plaintiff submitted his grievance related to the November 19 incident, Grievance Log No. 191973, on November 26, 2021. This grievance in relevant part states:

> On 11-18-2 I, inmate Allen [inmate number] witnessed Inmate Maddox . . . [inmate number] attempt suicide by attaching a makeshift rope made out of bed sheet to his cell's vent above the toilet …. I decided to intervene! After careful coercion inmate Maddox relented his attempt at suicide … Immediately, I/m Maddox was placed into restraints & escorted out of the housing unit. However, to my surprise, I/m Maddox returned 1 1/2 hrs. later. The following day I/m Maddox attempted to slice my throat. I sustained two (2) injuries that required a combined (11) eleven stitches that ranged (3) three inches in length. I/m Maddox and myself were placed in Ad-Seg where I remained until Nov. 24th 2021, then released to C-4-107. Upon communications with c/o Burgess and c/o Arias of housing Unit C-4 I had been removed from my P.M. Porters position and could not retain my job position because someone up in rank forbidded [sic] it.

(ECF No. 69 at 41-42.) For the "action requested" by Plaintiff in Grievance Log No. 191973, Plaintiff stated: "I would like those responsible for this disastrous suicide intervention held accountable and have my Porter's position job detail restored or placed in a suitable work position that is available of my choosing." UMF 7. In Grievance Log No. 1919173, Plaintiff did not mention either Defendant M. Rodriguez or Defendant J. Anaya, and the grievance does not mention force against Plaintiff by an officer or failure to protect.

Indeed, Grievance Log No. 191973 does not mention that force was used against Plaintiff

13

by any staff member or correctional officer, as he alleges in the instant action, and does not mention that Defendant M. Rodriguez used force in any way. Grievance Log No. 191973 does not mention that Defendant J. Anaya, or any staff member, stood by and refused to assist Plaintiff while Plaintiff was harmed by Defendant Rodriguez. UMF 8. Rather, Grievance Log No. 191973 alleges Maddox attempted suicide and Maddox later attacked Plaintiff resulting in Plaintiff's Ad-Seg confinement which caused Plaintiff to lose his Porter's job. Plaintiff's specifically requested remedy in Grievance Log No. 191973 was for his Porter's job to be returned.

Plaintiff argues that Grievance Log No. 191973 conveyed "the key cornerstone concern regarding preservation of life and safety and security of inmates." However, the thrust of Grievance Log No. 191973 was Maddox's attempted suicide, Maddox's subsequent attack on Plaintiff, and the loss of Plaintiff's job. The grievance utterly fails to mention use of force by any correctional officer or conduct by any other officer which could reasonably put them on notice that the grievance was other than what the express words state. *See Walton v. Hixson*, No. CIV S-09-1246 GEB, 2011 WL 6002919, at *1 (E.D. Cal. Nov. 30, 2011) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.")). Plaintiff failed to provide the prison adequate notice of the problem for which he now seeks redress.

This conclusion is further supported by Plaintiff statement regarding being "dissatisfied with the response," received on January 1, 2022. (ECF No. 69 at 43.) Plaintiff statement of dissatisfied was related to "failed to report suicide attempt," "cover up unethical work tactics to force inmate Maddox [inmate number] into snitching," "fabricated 115." *Id.* In the line for "dissatisfaction," Plaintiff, for the first time, said "staff used unnecessary force on I/m Allen by spraying chemical agent on me." *Id.*

Plaintiff did not allege excessive force at the first level, and the OOA as the first level reviewer, did not address the claim. UMF 13-14. Plaintiff seems to be arguing that raising "excessive force" in his dissatisfied response to the decision made at the first level, put CDCR on notice. In sum, Plaintiff's argument is that he can add a new claim against officers, at any point

14

1   during the administrative process, without disclosing that claim at the first level (at the time of the
2   filing of the grievance).  The Court disagrees.

3   Exhaustion of administrative remedies serves two main purposes. First, it protects
4   administrative agency authority, giving agencies an opportunity to correct their own mistakes.
5   *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  This purpose places
6   the CDCR on notice of a prisoner's claims such that those claims may be investigated at the
7   administrative level.  Second, it promotes efficiency, because claims generally can be resolved
8   more economically and quickly before an agency than a federal court.  *Id.*  The requirement that
9   an inmate fully exhaust the administrative remedies made available both "give[s] the agency a
10  fair and full opportunity to adjudicate [the complaint]" and "impos[es] some orderly structure on
11  the course of [the prison's] proceedings." *Woodford*, 548 U.S. at 90–91.  The exhaustion
12  requirement also improves litigation that does occur by leading to the preparation of a useful
13  record. *Sheltra v. Christensen,* 124 F.4th 1195, 1200–01 (9th Cir. 2024) (citing *Fuqua v. Ryan*,
14  890 F.3d 838, 844 (9th Cir. 2018)).

15  To exhaust claims under the PLRA, a prisoner must properly exhaust his claims.  He must
16  "us[e] all the steps that the agency holds out, and do[ ] so *properly* (so that the agency addresses
17  the issues on the merits)." *Woodward*, 548 U.S. 91 (emphasis in original) (citation omitted).
18  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural
19  rules because no adjudicative system can function effectively without imposing some orderly
20  structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Here, Plaintiff did not
21  set forth all of his claims in his grievance for review by OOA at the first level in Grievance Log
22  No. 191973, as is required by the regulation.  Cal. Code Regs. tit. 15, § 3482 ("for grievances,
23  describe all information known and available to the claimant regarding the claim, including key
24  dates and times, names and titles of all involved departmental staff (or a description of those
25  staff), and names and titles of all witnesses, to the best of the claimant's knowledge").  Plaintiff's
26  words did not convey that any force was used against him by correctional officers and that other
27  officers failed to protect him.  Rather, the thrust of his grievance was Maddox's attempted suicide
28  and Maddox's subsequent attack on Plaintiff for which Plaintiff lost his job.

15

Indeed, Plaintiff withheld disclosing an excessive force claim until after the first level of review was complete (of the two total levels of review). Once he received the completed first level response, he then wrote that he was dissatisfied and raised "excessive force" in his dissatisfaction response. However, adding a new claim once the first level is complete, as Plaintiff did here, does not exhaust administrative remedies. Raising a new claim at another level of the administrative process, and withholding the claim to be "sprung" later, would undercut the very purpose of the exhaustion requirement. The agency would not have a fair and full opportunity to adjudicate the dispute.

Plaintiff further argues that he was not interviewed as part of the grievance investigation, impliedly arguing that administrative remedies were unavailable to him. Even assuming that an interview with Plaintiff were required, Plaintiff fails to demonstrate how the failure to conduct an interview made the appeals process unavailable to him. Plaintiff had the opportunity—and was required—to raise the use of force and failure to protect claims in his initial inmate grievance to exhaust those claims. He fails to identify any reason why he could not have included that information in his initial grievance.

**Grievance Log No. 225842**

Plaintiff contends he submitted another grievance, Grievance Log No. 225842, related to the November 19, 2021 incident. The gist of Grievance Log No. 225842, received on February 22, 2022, states: "The nature of this complaint is to report 'staff misconduct.' It occurred on 2-14-22 within the Housing Unit C4 … between C.O. Arias, C.O. Harris, and myself." (Exh. B, ECF No. 60 at 48.) The incident involved Plaintiff's "missing CD player." *Id.* Plaintiff's grievance also described that "for some reason" C.O. Arias brought up the incident where inmate Maddox attempted suicide and Plaintiff was slashed the next day by the same inmate. *Id.*

Here, Grievance Log No. 225842 does not mention Defendants J. Anaya and M. Rodriguez or excessive force or failure to protect. Thus, Grievance Log 225842 is not relevant to claims against Defendants J. Anaya and M. Rodriguez.

Plaintiff argues that Grievance Log No. 225842 asserts acts of aggression by floor staff Arias and Harris. Nonetheless, the plain language of Grievance Log No. 225842 fails to identify

16

any wrongful conduct by either Defendant J. Anaya or Defendant M. Rodriguez.  *Thompson v. Razavi*, No. 5:20-CV-04292 EJD PR, 2023 WL 2277020, at *6 (N.D. Cal. Feb. 27, 2023) (holding, in part, that a grievance cannot serve as a substitute for proper exhaustion where the grievance did not mention the defendant); *Martinez v. Swift*, No. C 13-3973 RS (PR), 2015 WL 1349525, at *2 (N.D. Cal. 2015) (granting summary judgment for non-exhaustion because the grievance "does not mention [defendant]"); *Vasquez v. Paramo*, No. 18-CV-2097-GPC a(MDD), 2019 WL 3006459, at *3 (S.D. Cal. July 10, 2019) (granting summary judgment as to certain defendants because Plaintiff failed to name them and describe their actions in the administrative appeal).

**Grievance Log No. 234672**

The third grievance Plaintiff raises is Grievance Log No. 234672, received March 16, 2022.  Plaintiff alleges he was appealing retaliation by Correctional Officers Harris, Burgess, and Arias.  (Exh. C, ECF No 69 at 52.)  Grievance Log No. 234672 states in relevant part: "The nature of this complaint is to petition the administration at CCI to prevent the 3rd watch staff C.O.'s , C.O. Arias, C.O. Harris and C.O. Burgess from searching my cell/living quarters without the presence of a C-yard seargant [sic] for professional observation and adherence to Institution policy." *Id.*  Plaintiff stated in this grievance that "there is active multiple 602 grievances placed against staff because of 'staff misconduct' stemming from incidents that occurred on November 18th and 19th 2021, that range from a bribery situation, suicide attempt, attempted murder, and personal threats against me and my family."  *Id.*  Plaintiff further expounds on the lack of the investigation into Maddox's suicide attempt and Maddox's murder attempt on Plaintiff.  *Id.* ("No one has asked me for any statements regarding the attempted suicide or the attempted murder … I find that entire investigative process odd!!!"; "why I came so close to narrowly losing my life of someone who tried to slit my throat?").

This Grievance Log No. 234672, like the prior Grievance Log No. 225842, fails to mention either Defendant J. Anaya or Defendant M. Rodriguez or any claim of excessive force, failure to protect or any wrongful act of either Defendant.  The plain language of Grievance Log No. 225842 fails to identify any wrongful conduct by either J. Anaya or M. Rodriguez.  That

17

1  Grievance Log No. 234672 cross refers to the original grievance, Grievance Log No. 191973, is
2  irrelevant because as explained above, the original grievance (Grievance Log No. 191973) was
3  deficient in providing any facts related to excessive force or failure to protect by any correctional
4  officer.

**Grievance Log No. 327438**

6  The last grievance Plaintiff argues exhausted his remedies against Defendants is
7  Grievance Log No. 327438. (ECF No. 72 at 12-13.) Plaintiff argues that the OOG intentionally
8  misrepresented Plaintiff's issues regarding the November 18 and 19, 2021 incidents. Plaintiff
9  also argues that he was not interviewed.

10  In Grievance Log No. 327438, received in January 9, 2023, Plaintiff repeats in major part,
11  one of the prior grievances, Grievance Log No. 234672. (ECF No. 72 at 12-13.) Plaintiff alleges
12  that: "The nature of this complaint is to petition the administration at CCI to prevent the 3rd
13  watch staff C.O.'s C.O. Arias, C.O. Harris and C.O. Burgess from searching my cell/living
14  quarters without the presence of a C-yard seargant [sic] for professional observation and
15  adherence to Institution policy." *Id.* Plaintiff stated in the grievance that "there is active multiple
16  602 grievances placed against staff because of 'staff misconduct' stemming from incidents that
17  occurred on November 18th and 19th 2021, that range from a bribery situation, suicide attempt,
18  attempted murder, and personal threats against me and my family." *Id.* Plaintiff further
19  expounds on the lack of the investigation into Maddox's suicide attempt and Maddox's murder
20  attempt on Plaintiff. *Id.* ("No one has asked me for any statements regarding the attempted
21  suicide or the attempted murder … I find that entire investigative process odd!!!"; "why I came so
22  close to narrowly losing my life of someone who tried to slit my throat?").

23  This grievance, Grievance Log No. 327438, like prior Grievance Log No. 234672, fails to
24  identify any wrongful conduct for excessive force and failure to protect and fails to identify either
25  J. Anaya or M. Rodriguez in the grievance.

26  **IV.    CONCLUSION**

27  Plaintiff's first grievance did not mention defendants, excessive force or failure to protect.
28  The other grievances are unrelated to the incident at issue in this lawsuit.

18

For the reasons discussed above, it is HEREBY ORDERED as follows:

1. Defendants' motion for summary judgment, filed on February 6, 2025 (ECF No. 60), is granted; and

2. This action is dismissed, without prejudice, for failure to exhaust the administrative remedies.

IT IS SO ORDERED.

Dated: __**September 24, 2025**__  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE

19